UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
TRUSTEES OF THE PLUMBERS AND PIPEFITTERS
NATIONAL PENSION FUND, TRUSTEES OF THE
INTERNATIONAL TRAINING FUND, TRUSTEES OF
THE PLUMBERS WELFARE FUND, ADDITIONAL
SECURITY BENEFIT FUND, 401(K) SAVINGS PLAN,       **R E P O R T     A N D**
HOLIDAY AND VACATION FUND, and TRADE              **RECOMMENDATION**
EDUCATION FUND,

                                                     04 CV 2611 (FB)

                   Plaintiffs,

    -against-

DANIEL WEINTRAUB & ASSOCIATES, INC., et al.,

               Defendants.
------------------------------------------------------------------X

On June 23, 2004, Trustees of the Plumbers and Pipefitters National Pension Fund (the

"National Fund"), Trustees of the International Training Fund (the "Training Fund"), Trustees of

the Plumbers Local No. 1 Welfare Fund, Additional Security Benefit Fund, and 401(k) Savings

Plan, Holiday and Vacation Fund, and Trade Education Fund (collectively, the "Local 1 Funds,"

together with the National Fund and the Training Fund, the "Funds"), filed this action against

defendants Daniel Weintraub & Associates, Inc., a/k/a Weintraub The Plumbing Co., Inc.

("Weintraub Inc."), Daniel A. Weintraub (collectively "the Weintraub defendants"), Thomas

Parrella and Dominick Goffredo, pursuant to the Employee Retirement Income Security Act of

1974, as amended, 29 U.S.C. § 1001, et seq. ("ERISA"), and the Labor Management Relations

Act of 1947, 29 U.S.C. § 185 ("LMRA"), seeking an Order requiring Weintraub Inc. to submit to

an audit of its books and records.  Plaintiffs also seek to recover delinquent contributions owed to

the Funds, as well as interest, liquidated damages, attorneys' fees and costs. (Harney Am. Aff.[1] ¶ 6).

Following service of the Complaint, defendants Parrella and Goffredo appeared and filed answers. On March 20, 2006, the district court so ordered a Stipulation of Settlement, resolving plaintiffs' claims against defendant Parrella. Plaintiffs also settled with defendant Goffredo on September 28, 2005, when the district court so ordered a Stipulation of Dismissal as against Goffredo. Only the Funds' claims against the Weintraub defendants now remain.

On November 2, 2004, when the Weintraub defendants failed to file an answer or otherwise move with respect to the Complaint in a timely manner, the Clerk of the Court entered a default with respect to the Funds' claims against the Weintraub defendants. On November 2, 2004, a default judgment was entered by the district court, ordering the Weintraub defendants to submit regular, timely reports and contributions owed to plaintiff Funds, and enjoining defendants from disposing of, transferring, or selling any and all plan assets held individually or jointly without the express, written permission of plaintiffs and the court.

The matter was referred to the undersigned to conduct an inquest on damages on the same date. The inquest was held in abeyance while the Funds attempted to obtain an audit of Weintraub Inc.'s records. (See Order dated Oct. 20, 2005). When those attempts proved unsuccessful, plaintiffs filed papers in support of their proposed damages on November 18, 2005. Plaintiffs submitted additional documents on this matter on November 21, 2006, appeared for an

---

[1]Citations to "Harney Am. Aff." refer to the Amended Affirmation of John R. Harney, Esq., dated November 21, 2006.

inquest hearing before this Court on March 2, 2007, and submitted further papers on April 30, 2007.

## FACTUAL BACKGROUND

According to the Complaint, this action is brought by the Trustees of the Funds, which are jointly administered, multi-employer, labor-management employee benefit plan trust funds that provide fringe benefits to employees performing services within the jurisdiction of the Union. (Compl. ¶¶ 3-9). Defendant Weintraub Inc. is a New York corporation, located at 217-04 Northern Boulevard, Bayside, New York, that transacts business as a contractor or subcontractor in the plumbing and pipefitting industry. (Id. ¶ 10). Defendant Daniel A. Weintraub is the owner of Weintraub Inc. (Id. ¶ 11).

Defendant Weintraub Inc. is a signatory to a Collective Bargaining Agreement (the "CBA") with United Association Local Union No. 1 (the "Union). (Id. ¶ 14). The CBA requires defendant Weintraub Inc. to remit monthly reports and pay employee contributions to the Funds. (Id. ¶ 15; Cooke Decl.[2] ¶ 6). The CBA also authorizes the Trustees to conduct periodic audits of the employer to verify the accuracy of the remittance reports and contribution payments. (Compl. ¶ 19; CBA ¶ 29).

According to the Declaration of Robert H. Cooke, the Director of Contributions and Pensions for the National Funds, Weintraub Inc. submitted reports to the Local 1 Funds for the months of August 2001 through February 2002, indicating that during this period, it had

---

[2]Citations to "Cooke Decl." refer to the Declaration of Robert H. Cooke, dated November 21, 2006. Citations to "Cooke Supp. Decl." refer to the Supplemental Declaration of Robert H. Cooke, dated March 1, 2007.

employed an average of twenty-one employees working in covered employment. (Cooke Decl. ¶¶ 7-8). However, in the report submitted by Weintraub Inc. to the National Fund and the Training Fund for the same time period, defendants reported an average of only one covered employee. (Cooke Decl. ¶ 8). The plaintiffs sought an audit of Weintraub Inc. covering the period January 1998 through the present, but defendants refused to cooperate. (Harney Am. Aff. ¶ 10). Indeed, despite numerous attempts by the Trustees to obtain an audit or other documentation relating to Weintraub Inc. and despite an Order from this Court, dated October 20, 2005, directing Weintraub to respond to plaintiffs' discovery requests, the Weintraub defendants never complied. (Harney Am. Aff. ¶ 10). Defendant Weintraub ultimately provided a two-sentence letter to plaintiffs in which he acknowledged that the records that would permit plaintiffs to determine liability had allegedly been lost during a move and he no longer maintained copies. (Id. ¶ 11; Ex. A).

Under the CBA and the Restated Trust Agreements[3] that govern these Funds, when an employer fails to submit monthly remittance reports and fails to cooperate with its obligation to permit an audit of its records, the Funds are entitled to approximate damages. (Id. ¶ 13). Based on the Weintraub defendants' apparent under-reporting to the National Fund and Training Fund by 20 employees and the formula set forth in the Restated Trust Agreements for calculating unpaid contributions, plaintiffs seek delinquent contributions owed to the Funds in the amount of $4,390,912.85. (See Harney 2d Am. Aff.[4] ¶¶ 13, 19). In addition, under ERISA, an employer

_____

[3]Plaintiffs submitted Restated Trust Agreements for each of the individual Funds, collectively referred to as "Restated TAs," which have nearly identical provisions.

[4]Citations to "Harney 2d Am. Aff." refer to the Second Amended Affidavit of John R. Harney, submitted on April 30, 2007.

who fails to pay contributions is also liable for interest on the delinquent contributions calculated at the rates set forth in the CBA or Trust Agreement, together with liquidated damages, costs and attorneys' fees. In this case, plaintiffs assert that they are owed $791,890.57 in liquidated damages, and $1,203,990.88 in interest based on late payments. (See id.)

On November 2, 2004, the district court entered a default judgment against defendants, and ordered this Court to conduct an inquest and issue a Report and Recommendation. Liability has accordingly been established, and this Court need only consider damages in this matter. On November 11, 2004, this Court issued an Order directing the parties to submit papers regarding the plaintiffs' request for damages. Since that time, this Court has received plaintiffs' papers in support of their claim for damages but to date, defendants have failed to respond. The Court additionally held an inquest hearing on April 2, 2007, at which plaintiffs were present, but defendants failed to appear.


## DAMAGES

It is well-settled that the burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993); Clague v. Bednarski, 105 F.R.D. 552 (E.D.N.Y. 1985). When a default judgment is entered, the defendant is deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158 (internal citations omitted); Montcalm Publ'g Corp. v. Ryan, 807 F. Supp. 975, 977 (S.D.N.Y. 1992) (internal citations omitted). However, the plaintiff must still prove damages in an evidentiary proceeding at which the defendant has the opportunity to contest

5

the claimed damages. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at

158. "'While a default judgment constitutes an admission of liability, the quantum of damages

remains to be established by proof unless the amount is liquidated or susceptible of mathematical

computation.'" Levesque v. Kelly Communications, Inc., No. 91 CV 7045, 1993 WL 22113, at

*4 (S.D.N.Y. Jan. 25, 1993) (quoting Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)). Here,

where defendants have failed to respond, but plaintiffs have filed reasonably detailed

declarations, affidavits and exhibits pertaining to the damages incurred, and have appeared at an

inquest hearing on the matter, the Court can make an informed recommendation regarding

damages.


A. Damages Available Under ERISA

In an ERISA action brought by a fiduciary for or on behalf of a plan to enforce rights

under Section 1145, the statute specifies the damages to be awarded when judgment is entered in

favor of the plan. See 29 U.S.C. § 1132(g)(2). These include:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of--
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under
>> the plan in an amount not in excess of 20
>> percent (or such higher percentage as may be
>> permitted under Federal or State law) of the
>> amount determined by the court under
>> subparagraph (A),
> (D) reasonable attorney's fees and costs of the
> action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court
> deems appropriate.

6

29 U.S.C. § 1132(g)(2).  See also Iron Workers Dist. Council of Western New York & Vicinity

Welfare & Pension Funds v. Hudson Steel Fabricators & Erectors, Inc., 68 F.3d 1502 (2d Cir.

1995).

According to Article VI, Sections 5 and 6 of the Restated Trust Agreements that govern

the Funds in this action, an employer that fails to make prompt and timely payment of fringe

benefit contributions shall be liable to pay delinquent contributions owed, liquidated damages, an

interest charge and reasonable attorneys' fees and costs.  (See Restated TAs, Article VI, Section

6).  The Restated Trust Agreements also provide a formula for the estimation of damages when

an employer fails to submit both payments and reports, and when an audit has not been

conducted.  (See id., Article VI, Section 7).

Plaintiffs contend that because Weintraub Inc. failed to comply with ERISA's reporting

requirements and under-reported the number of employees working during the period from

December 7, 2000 through November 28, 2006, the National Fund and the Training Fund are

entitled to unreported contributions based on the number of unreported employees, in this case

20, and that the Local Funds are due unpaid contributions estimated pursuant to the formula

agreed upon in the Restated Trust Agreements for the period of December 2001 through

November 28, 2006.  (Harney 2d Am. Aff. ¶¶ 11-26 (citing Brick Masons Pension Trust v.

Industrial Fence & Supply, Inc., 839 F.2d 1333, 1338 (9th Cir. 1988))).  Plaintiffs argue that

where, as here, the employer has failed to maintain adequate records, the Funds are entitled to

recover for all hours worked by covered employees and the burden shifts to the employer to come

forward with evidence of the extent of that work.  See Anderson v. Mt. Clemens Pottery Co., 328

U.S. 680, 688 (1946) (holding that the employer may not "complain that the damages lack the

exactness and precision of measurement that would be possible had he kept records. . . .");
Combs v. Kings, 764 F.2d 818, 825-26 (11th Cir. 1985). This Circuit has cited Brick Masons
and Combs with approval, see N.Y.S. Teamsters Council Health & Hosp. Fund v. Estate of
DePerno, 18 F.3d 179, 183 (2d Cir. 1994), and courts have applied the burden-shifting analysis
of these cases where the employer fails to produce evidence of hours worked. See Local 282
Welfare Trust Fund v. A. Morrison Trucking, Inc., No. 92 CV 2076, 1993 WL 120081, *1-2, 5
(E.D.N.Y. Mar. 30, 1993); see also Grabois v. Action Acoustics, Inc., No. 94 CV 7386, 1995 WL
662127, *2-3 (S.D.N.Y. Nov. 9, 1995). The Court is also permitted to award approximate
damages when such damages are reasonable. See, e.g., Finkel v. Tech Man, Inc., No. 06 CV
2274, 2007 WL 433399, at *2 (E.D.N.Y. Feb. 6, 2007) (citing cases); Demolition Workers Union
v. Mackroyce Contracting Corp., No. 97 CV 4094, 2000 WL 297244, *7 (S.D.N.Y. Mar. 22,
2000).

Here, not only has Weintraub Inc. failed to comply with the document retention
provisions of ERISA, and ignored the Orders of this Court directing audits and discovery, but
plaintiffs have also alleged that Weintraub Inc. bribed Union officials to under-report work
performed. (Harney 2d Am. Aff. ¶ 25; Compl. ¶¶ 55, 61). Given that a default judgment has
been entered, this allegation is deemed admitted. See Greyhound Exhibitgroup, Inc. v. E.L.U.L.
Realty Corp., 973 F.2d at 158. Under these circumstances, and in the absence of evidence from
the employer to demonstrate that the estimate is inaccurate, the Court adopts plaintiffs'
reasonable estimations of contributions that are due, with some modifications.

B. Calculation of Default Judgment Damages

Plaintiffs seek delinquent contributions in the amount of $4,390,912.85. (Harney 2d Am. Aff. ¶¶ 13-19). Plaintiffs utilize two distinct methods of calculating delinquent contributions. (See id.)

1) Contributions Due After Commencement of Litigation

As an initial matter, the Court addresses plaintiffs' request for compensation for a delinquency lasting for the period beginning in December 2000[5] and continuing through November 2006. (See Harney 2d Am. Aff. ¶ 17; Sarceni Supp. Decl. ¶ 10). Generally, awarding compensation for payments due after an action was filed, and when the defendant has defaulted, would be improper because Rule 54(c) of the Federal Rules of Civil Procedure limits default judgment awards to the "amount prayed for in the demand for judgment." Fed. R. Civ. P. 54(c); see Scala v. Moore McCormack Lines, Inc., 985 F.2d 680, 683 (2d Cir. 1993); Johnson v. Home Savers Consulting Corp., No. 04 CV 5427, 2007 WL 925518, at *4 (E.D.N.Y. Mar. 23, 2007) (noting that "[w]here, as here, default has been noted, a party's recovery is limited to the amount prayed for in its demand for judgment"), R&R adopted by 2007 WL 1110612 (E.D.N.Y. April 11, 2007). The rationale for this rule is that "'the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action.'" King v. STL Consulting, LLC, No. 05 CV 2719, 2006

_____

[5]The Court notes that plaintiffs seek compensation for under-reporting to the National Fund and the Training Fund beginning in December of 2000, but request delinquent contributions due to the Local Funds and the 401(k) Savings Plan beginning in December of 2001, since defendants' delinquency in payment to the Local Funds and the 401(k) Savings Plan only began in December of 2001. (See Harney 2d Am. Aff. ¶¶ 13, 17).

9

WL 3335115, at *4 (E.D.N.Y. Oct. 3, 2006) (quoting 10 Wright, Miller & Kane, Federal Practice & Procedure: Civil 3d § 2663 (1998)).

Notice to defendants is accordingly a central concern in limiting default judgments to the amount requested in the complaint, and courts are thus permitted to award damages that accrue during the pendency of a default ERISA action where such damages are explicitly requested in the complaint. See Ames v. STAT Fire Suppression, Inc., 227 F.R.D. 361, 362 (E.D.N.Y. May 25, 2005) (awarding damages that accrued during the pendency of a default ERISA action "because such damages were explicitly requested in the complaint. . ."); see also Annuity, Pension, Welfare and Training Funds of Intern. Union of Operating Engineers, Local 14-14B, AFL-CIO ex rel. Christian v. Drama Const. Corp., No. 06 CV 6148, 2007 WL 1827830, *3 n.2 (E.D.N.Y. June 22, 2007) (citing Ames) (recommending an audit in a default ERISA action from the start of delinquency "through the present[,]" because plaintiffs "requested in the complaint that defendants be compelled to pay 'any additional amounts that may be determined to become due and owing to plaintiffs during the pendency of this action'"); King v. STL Consulting, LLC, 2006 WL 3335115, at *4-5 (citing cases) (recommending an award of delinquent payments that accrued during the pendency of an ERISA default action where the complaint explicitly requested an award of damages that included those payments that become due "'during the course of the action. . .'"); Mason Tenders Dist. Council Welfare Fund v. I.M.I. Constr. Corp., No. 99 CV 12105, 2004 WL 1700615, at *2 (S.D.N.Y. July 30, 2004) (awarding damages that accrued during the pendency of the action where the complaint reasonably gave notice that such damages were being claimed).

Here, plaintiffs, in their Complaint, requested an order requiring defendants to submit to an audit for the period "January 1998 through current." (Compl. ¶¶ 21-22). In addition, while the Complaint demanded damages for the months of January 1998 through May 2004 (see Compl. ¶¶ 25-27, 30, 32-34, 37, 39-40, 42), in the Wherefore Clause of the Complaint, plaintiffs also demanded "judgment for all contributions and liquidated damages which became due subsequent to the filing of this action through the date of judgment." (See Compl. at 14). The Court also notes that when judgment was entered, the Weintraub Defendants were ordered "to submit regular, timely reports and contributions owed to Plaintiff Funds." (Order of Judgment). Accordingly, defendants were placed on notice by the Complaint, by the Order of Judgment, and by the papers submitted in connection with the motion for default, that plaintiffs have demanded an award of additional contributions accrued during the pendency of the litigation. (See Harney 2d Am. Aff. ¶ 17; Sarceni Supp. Decl. ¶ 10). Thus, the Court finds that the notice principles of Rule 54(c) have been satisfied and the Court has included the estimation of delinquent contributions for the thirty additional months[6] that plaintiffs now assert became overdue after the filing of the present action.

2)  The Local Funds and 401(k) Savings Plan

For the Local Funds and the 401(k) Savings Plan, plaintiffs estimate the amount in keeping with the terms of the Restated Trust Agreements for delinquent contributions. (Id. ¶¶ 15-19). According to the Restated Trust Agreements, where an employer is two or more months

---

[6] The Court notes that plaintiffs only seek compensation for under-reporting to the National Fund and the Training Fund through September 2005. (See Harney Am. Aff., Ex. C). As this is plaintiffs' application for damages, the Court has used their lower calculation.

delinquent in making required contributions and has not submitted documents showing hours worked by its employees, the Funds may project the amount of delinquency for each month as the greater of either (a) the average of the last three monthly payments or reports, or (b) the average of twelve monthly payments or reports. (Id. ¶ 15; Restated TAs, Article VI, Section 7). Defendants failed to submit remittance reports to the Local Funds from December of 2001 through the present. (Harney 2d Am. Aff. ¶ 16). The final three reports[7] submitted to the Local Funds were in the amount of $45,579.40 for the month of September 2001, $66,643.43 for the month of October 2001, and $47,210.10 for the month of November 2001.[8] (Id. ¶ 17; Sarceni Decl., Ex. 3; Sarceni Supp. Decl. ¶ 10). The average amount owed for each month is $53,144.31,

---

[7]The Court notes that although the copies of some of the reports submitted to the Court were in places illegible, this Court's review of these documents, in conjunction with the sworn statements from Mr. Walter Sarceni, the Administrator of the Plumbers Local No. 1 Welfare Fund, who reviewed the actual documents and submitted Declarations signed March 2, 2007 ("Sarceni Decl."), and April 30, 2007 ("Sarceni Supp. Decl."), sufficiently support plaintiffs' calculation. (See Sarceni Decl. ¶ 7; Sarceni Supp. Decl. ¶¶ 7, 10). The Restated Trust Agreements permit plaintiffs to use either the reported amount due, or the amount actually paid, to estimate delinquent months. (See Restated TAs, Article VI, Section 7). Plaintiffs indicate that the figures for the months of September through November of 2001 are both the amount reported and the amount actually paid. (See Sarceni Supp. Decl. ¶ 10). Accordingly, plaintiffs' documentation of the amount that they have actually been paid is likewise sufficient to support this basis for estimated damages. (See id.; Sarceni Decl., Ex. 3).

[8]Mr. Sarceni explained that for some months in 2002, "general contractors reported hours worked by employees of Weintraub Associates and made payments to the Local 1 Funds on behalf of Weintraub." (Sarceni Supp. Decl. ¶ 7 n.1). However, these limited payments and reports do not accurately "reflect all covered employment performed by employees of Weintraub Associates since they are project-specific," and Weintraub Inc. was likely performing additional plumbing work for other contractors and owners. (See id.) Accordingly, these partial payments are not an accurate basis for estimated damages. Weintraub Inc. additionally submitted reports for several weeks in 2002, but never for a complete month. (See id.) Accordingly, this Court adopts plaintiffs' use of the reports submitted for September, October, and November of 2001, as they represent the last three months in which Weintraub Inc. provided complete reports to the Local Funds. However, for those months that the Trustees received partial compensation, the Court has deducted the amounts received from the estimated amount due.

12

which is the appropriate estimated monthly amount now delinquent, in keeping with the terms of the Restated Trust Agreement. (See Harney 2d Am. Aff. ¶ 17; Sarceni Supp. Decl. ¶ 10). The Trustees received partial compensation from subcontractors of Weintraub Inc. for some of these months, in the total amount of $121,946.03. (See Sarceni Decl., Ex. 3). The Court has deducted this amount from the estimated delinquency. Based on these adjusted calculations, the Weintraub defendants owe the Local Funds $3,066,712.57 in delinquent contributions for the entire period.

Remittance reports were submitted to the 401(k) Savings Plan for $4,774.77 for September 2001, $10,547.65 for October 2001, and $616.91 for March 2002. (See Harney 2d Am. Aff. ¶ 18; Sarceni Supp. Decl. ¶ 11). The average delinquent monthly payment owed to the 401(k) Savings Plan is accordingly $5,313.11. (See Harney 2d Am. Aff. ¶ 18; Sarceni Supp. Decl. ¶ 11). Plaintiffs request delinquent payments for the same period. (See Harney 2d Am. Aff. ¶ 18; Sarceni Supp. Decl. ¶ 11). Weintraub Inc. additionally reported, but failed to remit, salary deferrals of $10,547.65 for October of 2001. The total amount owed in delinquent contributions by the Weintraub defendants to the 401(k) Savings Plan for the entire period is $329,334.25. (See Harney 2d Am. Aff. ¶ 18; Sarceni Supp. Decl. ¶ 11).


   2) The National Fund and Training Fund

   Plaintiffs utilize a different method to calculate the amounts that they claim are due to the National Fund and the Training Fund. The Trustees seek additional contributions based on an estimate of the number of under-reported workers for the National Fund and Training Fund. The estimated number of under-reported workers is derived from the difference between the number

of workers reported to the Local Funds (an average of 21 workers) and the number reported to

the National Fund and Training Fund (an average of only 1 worker) over a period of eight

months, from August of 2001 through February of 2002.[9] (See Harney 2d Am. Aff. ¶12; Cooke

Decl. ¶¶ 7-8).

The Court has reviewed the documentation submitted by plaintiffs and acknowledges the

difficulty that plaintiffs face in determining the actual number of workers for whom contributions

are due given defendants' deceptive under-reporting of the number of workers, and subsequent

refusal to submit to an audit. Accordingly, this Court adopts as reasonable plaintiffs' method for

calculation of estimated unpaid contributions as to the National Fund and the Training Fund.

The Weintraub defendants thus owe $862,920.00 to the National Fund and $10,000.00 to the

Training Fund in delinquent contributions for the entire period.[10]

---

[9]Plaintiffs exclude the next three months from their calculation, possibly because records show that Weintraub Inc. reported an identical number of workers to the Local Funds, the National Fund and the Training Fund. (See Harney 2d Am. Aff. ¶12; Cooke Decl. ¶¶ 7-8). Including these additional three months would minimize the difference in reporting between the Local and the National Funds, thereby lowering the estimated amount of delinquent payments now due. However, as discussed supra at 10 n.6, reports for these months were submitted by certain subcontractors on behalf of Weintraub Inc., and do not represent an accurate record of amounts owed during that time. (See Sarceni Decl. ¶ 7 n.1). The honesty of defendants' subcontractors, who apparently chose not to engage in under-reporting for the work that they did on behalf of Weintraub Inc., does not alter the pattern of under-reporting that plaintiffs have established occurred in this case. The Court declines to alter plaintiffs' reasonable calculation of under-reporting by defendants based upon on these apparently aberrant submissions from subcontractors.

[10]The Court notes that plaintiffs seek delinquent contributions for the National Fund and the Training Fund only through September of 2005, although they have calculated interest due through November of 2006. (See Harney Am. Aff., Ex. C). As this is plaintiffs' application for damages, this Court has utilized their lower number.

14

Based on the statement of damages prepared by plaintiffs, it is estimated that delinquent contributions owed for the period of December 7, 2000 through November 28, 2006 for the Funds as follows:

| FUND | CONTRIBUTIONS OWED |
|------|--------------------|
| Local Funds | $ 3,066,712.57 |
| 401(k) Savings Plan | $ 329,334.25 |
| National Fund[11] | $ 862,920.00 |
| Training Fund | $ 10,000.00 |
| TOTAL | $ 4,268,966.82[12] |

Having reviewed the plaintiffs' statement of damages and supporting documentation, the Court respectfully recommends that plaintiffs be awarded delinquent contributions in the amount of $4,268,966.82, as set forth above.

---

[11] The Court notes that the National Fund, along with the Training Fund, received some funds from defendants. Although the Court deducted the amounts that the Local Funds actually received from their estimated delinquent totals, see discussion supra at 12-13 n.11, the Court has not done so when calculating the amount of delinquency owed to the National Fund and Training Fund. This is because the estimation of delinquent payments due to the National Fund and Training Fund is not based on the total contributions due to them, but rather on the estimated under-reporting of the average number of workers to these funds by defendants. The Local Funds, on the other hand, based their estimate, consistent with the terms of the Restated Trust Agreement, on the total delinquent amount due for each month, thereby requiring that any funding received be deducted from the estimated amounts due for those months.

[12] The Court has recommended that plaintiffs' receive slightly less than the amount requested by plaintiffs for delinquent contributions because of partial payments received during the period of the delinquency. (See supra at 12-13 n.8).

15

4) Lost Earnings

Pursuant to the Collective Bargaining Agreement, plaintiffs also argue that the Weintraub defendants owe the 401(k) Savings Plan an additional $61,944.30 in lost earnings. Paragraph 18 of the CBA provides that "[r]etention of these contributions by an Employer . . . makes the Employer a fiduciary with respect to such Employee contributions . . . [and f]ailure to remit Employee contributions on a timely basis shall make the Employer liable for interest and any lost earnings or restoration of profits resulting from the failure to remit on a timely basis." (CBA ¶ 18). Courts may award lost profits when fiduciaries breach their obligation to an ERISA related plan. See 29 U.S.C. § 1109(a) (providing that ERISA fiduciaries are "personally liable to make good to such plan any losses to the plan resulting from each such breach"); see also Chao v. Sauve, No. 03 CV 2041, 2004 WL 503819 (N.D. Iowa Mar. 16, 2004) (awarding lost profits in a default ERISA action). However, while Section 1109(a) seeks to compensate plans for lost earnings, plaintiffs have presented no information to advise the Court of what the lost earnings to the 401(k) Savings Plan were. The Court additionally notes that the governing Restated Trust Agreement, which discusses the damages available to the 401(k) Savings Plan in the event that it is not properly paid does not address the issue of lost earnings.

In this case, the Court is recommending that plaintiffs be awarded interest calculated at the rate of 10% on the delinquent contributions owed to the 401(k) Savings Fund. See infra at 18. Yet plaintiffs nonetheless demand an additional amount, calculated according to the rate for large corporate under-payments provided in Revenue Ruling 2006-63, pursuant to the Internal Revenue Code § 6621. (See Harney 2d Am. Aff. ¶ 19). Not only have plaintiffs failed to explain the extent of their lost earnings, but an award pursuant to Section 6621 would amount to the

16

prime rate plus three percent in additional interest. This would nearly double the interest requested on the funds owed to the 401(k) Savings Plan. Other courts have found the rate of 9% to be an adequate compensation for lost profits that also avoided a windfall award to plaintiffs. See Pension Benefit Guaranty Corp. v. Solmsen, 743 F. Supp. 125, 128-29 (E.D.N.Y. 1990) (awarding 9% interest); Donovan v. Bryans, 566 F. Supp. 1258, 1266 (E.D. Pa. 1983) (same).

Since plaintiffs have failed to provide any evidence to this Court that any additional interest is due to the 401(k) Savings Plan for alleged, but undemonstrated, lost profits, this Court finds that its recommendation of an award of interest at the rate of 10% per annum, see infra at 18-19, along with liquidated damages and delinquent contributions, provides sufficient compensation to the 401(k) Savings Plan for any losses. Accordingly, the Court declines to include the Funds' calculation of additional interest for lost profits.


C. Interest

Under the CBA, the Restated Trust Agreements, and 29 U.S.C. § 1132(g)(2), plaintiffs are entitled to an award of interest for late payment of contributions. (See Restated TAs, Article VI, Section 6). Interest is calculated at various rates per annum as set forth in the Restated Trust Agreements, for the period of the delinquency. The Court notes that although plaintiffs have requested interest calculated at the rate of 10% for the Local Funds and the 401(k) Savings Plan and at the rate of 12% for the National Fund, the Restated TAs actually authorize interest

calculated at higher rates for each of these Funds.[13]  However, as this is plaintiffs' application for damages, the Court has used their lower figures.

Unlike that of the National Fund and the Local Funds, the Restated Trust Agreement of the Training Fund does not specify an interest rate to be used to calculate overdue contributions, instead providing that interest is due "at a rate which shall, from time to time, be set by the Trustees. . . ."  The CBA provides for an interest rate of 10%.  (See CBA Article 2 ¶ 23). Plaintiffs have represented, however, that, consistent with the terms of the Restated Trust Agreement, the "Trustees of the ITF have established an interest rate for unpaid delinquent contributions in the amount of twelve percent (12%) per annum at a meeting held on June 29, 2004."  (Harney 2d Am. Aff. ¶ 14).  The Court has accordingly used this rate to calculate the interest due to the Training Fund.

The amounts owed in interest set forth below are calculated in keeping with plaintiffs' request from the time of default up to November 28, 2006[14] as follows:

---

[13]Under the Restated TAs, plaintiffs are permitted to calculate interest at the rate of 18% annually for the National Fund and the 401(k) Savings Plan and at the rate of 12% per annum for the Local Funds.

[14]The Court notes that plaintiffs are entitled to any additional interest that accrues up to the date that final judgment is entered by the clerk of the court, calculated in keeping with the above rates.

| FUND | INTEREST RATE | INTEREST OWED[15] |
|---|---|---|
| Local Funds | 10% | $ 709,151.12 |
| 401(k) Savings Plan | 10% | $ 81,942.54 |
| National Fund | 12% | $ 352,334.47 |
| Training Fund | 12% | $ 4,173.72 |
| TOTAL | | $ 1,147,601.85 |

Having reviewed plaintiffs' statement of damages and supporting documentation, this Court respectfully recommends that plaintiffs be awarded $1,147,601.85 in interest.

D. Liquidated Damages

Plaintiffs additionally seek liquidated damages for the Funds, in accordance with 29 U.S.C. § 1132(g)(c)(ii) and the provisions of the CBA, calculated according to rates set forth in the CBA and the Restated Trust Agreements as follows:

| FUND | RATE | LIQUIDATED DAMAGES[16] |
|---|---|---|
| Local Funds | 20% | $ 613,342.51 |
| 401(k) Savings Plan | 20% | $ 65,866.85 |
| National Fund | 10% | $ 86,292.00 |
| Training Fund | 20% | $ 2,000.00 |
| TOTAL | | $ 767,501.36 |

---

[15]The Court has reduced plaintiffs' calculation of the amount owed in interest due to the Local Funds to reflect the amounts actually awarded in those months for which plaintiffs received partial payment of the estimated delinquent payments, as discussed supra, at 15.

[16]The Court has reduced plaintiffs' calculation of the amount in liquidated damages due to the Local Funds to reflect the amounts actually awarded in those months for which plaintiffs received partial payment of the estimated delinquent payments, as discussed supra, at 15.

Having reviewed plaintiffs' statement of damages and supporting documentation, this Court respectfully recommends that plaintiffs be awarded $767,501.36 in liquidated damages.

In total, this Court respectfully recommends that plaintiffs be awarded reimbursement of $6,184,070.03 for delinquent contributions, liquidated damages and interest.

## ATTORNEYS' FEES

Plaintiffs also seek attorneys' fees in the amount of $28,385.43, representing services performed by counsel from two different firms in connection with plaintiffs' efforts to obtain this award.[17] (Harney Am. Aff. ¶¶ 21-24; Exs. D, E). The Restated Trust Agreements oblige defendants to pay reasonable attorneys' fees and costs. (See Restated TAs, Article VI, ¶¶ 5-6). An award of reasonable attorneys' fees and costs is additionally provided for by ERISA. See 29 U.S.C. § 1132(g)(2)(D).

---

[17]Although this action was initially commenced against four defendants, two of whom have since settled, the injury was principally perpetrated by defendants Daniel Weintraub and Weintraub Inc., and the bribes that the Weintraub defendants offered to the other defendants in this case were for the benefit of the Weintraub defendants. (See Compl. ¶¶ 55-56, 61-62). Given the overwhelming role that they have played in this matter, and the disproportionate amount of legal work that the Weintraub defendants have warranted, the Court respectfully recommends that the Weintraub defendants be assessed the entire amount owed in attorneys' fees. See Koster v. Perales, 903 F.2d 131, 139 (2d Cir. 1990) (holding that "[t]he allocation of fee liability is a matter committed to the district court's discretion and will not be disturbed unless the determination evidences an abuse of discretion"); see also Carroll v. Blinken, 105 F.3d 79, 82 (2d Cir. 1997) (citing Koster for the proposition that the allocation of fees is a matter within the court's discretion).

A.  Standard

In determining the amount of attorneys' fees due, the Court looks to what a reasonable

client would be willing to pay to determine the "presumptively reasonable fee." See Arbor Hill

Concerned Citizens Neighborhood Ass'n v. County of Albany, 484 F.3d 162, 169 (2d Cir.),

amended and superceded at - - - F.3d - - -, 2007 WL 2004106, at *7 (2d Cir. July 12, 2007)

(adding a footnote regarding pro bono representation).  In determining the rate that "a paying

client would be willing to pay," courts are directed to consider, inter alia:

> (1) the time and labor required; (2) the novelty and difficulty of the
> questions; (3) the level of skill required to perform the legal service
> properly; (4) the preclusion of employment by the attorney due to
> acceptance of the case; (5) the attorney's customary hourly rate; (6)
> whether the fee is fixed or contingent; (7) the time limitations
> imposed by the client or the circumstances; (8) the amount
> involved in the case and the results obtained; (9) the experience,
> reputation, and ability of the attorneys; (10) the undesirability of
> the case; (11) the nature and length of the professional relationship
> with the client; and (12) awards in similar cases . . .

484 F.3d at 166 (internal citation omitted); see also Warner Bros. Entertainment, Inc. v.

Carsagno, No. 06 CV 2627, 2007 WL 1655666, at *7 (E.D.N.Y. June 4, 2007) (applying some of

these Arbor Hill factors).

Courts are also instructed to balance:

> the complexity and difficulty of the case, the available expertise
> and capacity of the client's other counsel (if any), the resources
> required to prosecute the case effectively . . . , the timing demands
> of the case, whether the attorney had an interest (independent of
> that of his client) in achieving the ends of the litigation or initiated
> the representation himself, whether the attorney was initially acting
> pro bono . . . , and other returns (such as reputation, etc.) the
> attorney expected from the representation.

21

Id. at 164; see also Heng Chan v. Sung Yue Tung Corp., No. 03 CV 6048, 2007 WL 1373118, at *2 (S.D.N.Y. May 8, 2007) (applying some of these Arbor Hill factors).

In the present case, the Court has balanced the results obtained by counsel with the relative simplicity of a default action such as this, taking into account the skill and experience of the attorneys. In addition, the Court is guided by substantial experience in similar cases to determine what a reasonable client would pay for similar services.

## B. Application

In accordance with the decision in New York State Association for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983), plaintiffs' counsel submitted the affirmation of Charles R. Virginia, Esq., dated November 16, 2005 ("Virginia Aff."), setting forth the dates and amount of time during which services were rendered, and a description of services performed by Barnes, Iaccarino, Virginia, Ambinder & Shepherd, P.L.L.C. ("Barnes Firm"). Plaintiffs' counsel has additionally submitted the Amended and Second Amended Affidavits of Mr. Harney, similarly setting forth the date, time, and a description of the services performed by O'Donoghue & O'Donoghue, L.L.P. ("O'Donoghue Firm").

According to the Affidavits, the Barnes Firm spent a total of 53.81 hours (see Virginia Decl. ¶ 16), and the O'Donoghue Firm spent a total of 89.75 hours (see Harney Am. Aff., Ex. D), rendering services in connection with this action, including the preparation of legal documents, such as the complaint, motion to compel, and motion for default judgment, along with attendance at a deposition and several court conferences, preparation of correspondence, telephone calls and

reviews of the file. The Barnes Firm additionally seeks the $150.00 filing fee in this action, while the O'Donoghue Firm requests $563.83 in costs that it accrued while litigating this matter. (Harney Am. Aff. ¶¶ 21-24, Exs. D, E).

The Barnes firm utilized three attorneys in this case: Ms. Yongmin Oh, Esq., a 2003 graduate of Fordham Law School; Ms. Judy Wong, Esq., a 1997 graduate of Brooklyn Law School; and Mr. Charles Virginia, Esq., a 1989 graduate of Fordham Law School. (See Supp. Virginia Decl.[18] ¶¶ 18-20).

In his affidavit, Mr. Virginia indicates that 4.59 hours were spent by members of the firm, who initially charged at the rate of $200.00 per hour; 42.11 hours were spent by associates, who initially charged at the rate of $150.00 per hour; and 7.11 hours were spent by paralegals who initially billed at the rate of $50.00 per hour. (Virginia Decl. ¶ 2). The hourly rates charged by the Barnes Firm increased in March of 2005, and time was thereafter billed at a rate of $210.00 per hour for members, $160.00 per hour for associates, and $75.00 per hour for paralegals. (Id.)

The Court has reviewed the contemporaneous time records, and based on its familiarity with the going rates for partners and associates in this district, the Court concludes that the time spent, as detailed in plaintiffs' request for attorneys' fees, appears to be reasonable and appropriate under the circumstances. Furthermore, this Court finds that the rates of $200.00 and $210.00 per hour for members or partners, $150.00 and $160.00 per hour for associates, as well as $50.00 and $75.00 per hour for paralegals are commensurate with the prevalent market rate in this district, and in accordance with what a reasonable client would pay for similar services.

---

[18]Citations to "Supp. Virginia Decl." refer to the supplemental Declaration of Charles A. Virginia, submitted to the Court on April 30, 2007.

Thus, the Court respectfully recommends that the Barnes Firm be compensated at a rate of $200.00 and $210.00 per hour for partners, $150.00 and 160.00 per hour for associates, and $50.00 and $75.00 per hour for paralegals. See, e.g., Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (2d Cir. 1998) (upholding hourly rates of $200.00 for partners, $135.00 associates and $50.00 for paralegals); Finkel v. Tech Man, Inc., 2007 WL 433399, at *1-2 (finding in a default ERISA action that the rate of $200.00 per hour for a lawyer with eight years of experience, and $75.00 per hour for a paralegal to be reasonable in this district); Rotella v. Bd. of Educ., No. 01 CV 434, 2002 WL 59106, at *2, *4 (E.D.N.Y. Jan. 17, 2002) (finding the prevalent market rate in this district to be in the range of $200.00 to $250.00 for partners, $100.00 to $200.00 for associates and $50.00 for paralegals).

The O'Donoghue Firm also utilized three attorneys in this matter: Maydad Cohen, Esq., a 2000 graduate of American University School of Law; Joseph Shelton, Esq., a 2003 graduate of the Columbus School of Law at the Catholic University of America; and Mr. Harney, who graduated from the University of Wisconsin Law School in 1989. (Harney 2d Am. Aff. ¶¶ 29-31). The O'Donoghue Firm has requested the hourly rates of $250.00 per hour for attorneys, and $125.00 per hour for paralegals. (Id. ¶ 27). While Mr. Harney's rate of $250 per hour is reasonable for this district, see Rotella v. Bd. of Educ., 2002 WL 59106, at *2, a reasonable client would not pay the identical rate to the other two attorneys on the case, who have substantially less legal experience. The requested rate of $125.00 per hour for paralegals is also higher than a reasonable client would pay in this district. It is accordingly respectfully recommended that Mr. Cohen's services be compensated at the reasonable rate of $180 per hour, Mr. Shelton's services be compensated at the rate of 160.00 per hour, and the paralegals' services

be charged at the rate of $75 per hour. See, e.g., Savino v. Computer Credit, Inc., 164 F.3d 81, 87 (upholding hourly rates of $200.00 for partners, $135.00 associates and $50.00 for paralegals); Finkel v. Tech Man, Inc., 2007 WL 433399, at *1-2 (finding in a default ERISA action that the rate of $200.00 per hour for a lawyer with eight years of experience, and $75.00 per hour for a paralegal to be reasonable in this district); King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *7-8 (E.D.N.Y. Oct. 3, 2006) (awarding attorneys' fees for a partner in a default ERISA case at the rate of $275.00 per hour, but $100.00 per hour for a recently admitted attorney); LaBarbera v. J.E.T. Res., Inc., 396 F. Supp. 2d 346, 352-53 (E.D.N.Y. 2005) (compensating a partner at the rate of $250 per hour for work done on a straightforward ERISA action, but awarding $150 per hour for the time of associates). The Court additionally notes that although more time has been expended on this matter than is standard in an ERISA default, this case involved greater complexity than most default actions, and a review of the contemporaneous time records indicates that the time spent was reasonable. (See Harney Am. Aff., Ex. D).

This Court accordingly respectfully recommends that the Barnes Firm be reimbursed for attorneys' fees in the amount of $7,885.33, plus $150.00 in costs incurred in connection with the litigation, for a total of $8,035.33. The Court additionally respectfully recommends that the O'Donoghue Firm be awarded $17,880.00 in attorneys' fees, reflecting the adjustment in rates recommended by this Court, plus $563.83 in costs, for a total of $18,443.83.

## PERMANENT INJUNCTION

Plaintiffs additionally seek entry of a "Permanent Injunctive Order requiring Defendants Weintraub Associates and Weintraub to provide a quarterly report of all income and expenses to the Plaintiff Funds effective immediately." (Harney Am. Aff. ¶ 26). Where a defendant is in default and the applicable statute provides for injunctive relief as a possible remedy, the court may issue an injunction provided that plaintiffs meet the requirements for obtaining a permanent injunction, which include a showing of "'irreparable harm should the injunction not be granted.'" King v. Nelco Indus., Inc., 1996 WL 629564, at *1 (quoting Haitian Centers Council, Inc. v. McNary, 969 F.2d 1326, 1338 (2d Cir. 1992), vacated as moot, 509 U.S. 918 (1993)). Plaintiffs must also demonstrate the "absence of an adequate remedy at law." LaBarbera v. David Liepper & Sons, Inc., No. 06 CV 1371, 2006 WL 2423420, at *6 (E.D.N.Y. July 6, 2006) (citation omitted).

In entering default judgment against the Weintraub defendants, the district court ordered "that Defendants Weintraub & Associates, Inc. and Daniel Weintraub be required to submit regular, timely reports and contributions owed to Plaintiff Funds." (See Order dated November 2, 2004). Plaintiffs have failed to demonstrate how that order, along with the damages recommended in this Report, will not serve as an adequate remedy for the actions of the Weintraub defendants, nor have they demonstrated that irreparable harm will occur should this Court decline to grant their request. See, e.g., King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, *9 (E.D.N.Y. Oct. 3, 2006) (denying injunctive relief where plaintiff failed to demonstrate that monetary damages will serve as an adequate remedy); LaBarbera v. David Liepper & Sons, Inc., 2006 WL 2423420, at *6 (denying injunctive relief where plaintiff failed to

26

demonstrate that it would not be able to collect monetary damages from defendants); Local 348 Health & Welfare Fund ex rel. Fazio v. Milmar Food Group, LLC, No. 05 CV 3459, 2006 WL1025075, at *6 (E.D.N.Y. Mar. 24, 2006) (same). Accordingly, it is respectfully recommended that plaintiffs' request for a permanent injunction be denied.

## CONCLUSION

Accordingly, it is respectfully recommended that plaintiffs be awarded damages in the amount of $6,210,549.19, representing $4,268,966.82, which is the amount owed in delinquent contributions, plus $1,147,601.85 in interest, $767,501.36 in liquidated damages, and attorneys' fees and costs of $26,479.16.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within ten (10) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
August 14, 2007

```
              /s/
```
Cheryl L. Pollak
United States Magistrate Judge

27